UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELA STALEY,<br><br>                    Plaintiff,<br>     v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br>U.S. BANCORP,<br><br>                    Defendant. | Case No. 1:10-cv-00591-BLW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## INTRODUCTION

The Court has before it several motions in limine. The parties have informed that Court that they would like a quick decision on two of them: (1) Plaintiff's Motion in Limine to Exclude Evidence of Late-Disclosed Individuals (Dkt. 49), and (2) Plaintiff's Motion for Sanctions/In Limine pursuant to Fed. R. Civ. P. 37 (Dkt. 63). Accordingly, the Court will address those two motions here, and address the remaining motions in due course.

## ANALYSIS

**1.     Motion to Exclude Late-Disclosed Individuals**

Staley asks the Court to prohibit Defendant U.S. Bank (the "Bank") from introducing at trial any evidence of Jill Costa, Susan Strand, and Randy Johnston's

involvement in the decision to terminate Staley, and from introducing any evidence regarding Ben Hunt.[1] Staley claims that these witnesses were not timely disclosed.

Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).  Rule 26(a), of course, deals with required disclosures, and Rule 26(e) deals with supplementing those disclosures.

Alternative sanctions to disallowing such evidence includes: (A) payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) informing the jury of the party's failure; and (C) imposing other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(c)(1)(A)-(C). The sanctions listed in Rule 37(b)(2)(A)(i)-(vi) include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [and] (vi) rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

## A.     Costa, Strand and Johnston

---

[1] Staley originally asked the Court to exclude evidence regarding two other individuals – Charles Hollingsworth and Diane Wjoinowski – but it appears she subsequently withdrew that request in a separate brief. (Dkt. 64). If that is not the case, counsel shall notify the Court immediately, and the Court will take up the matter.

**MEMORANDUM DECISION AND ORDER - 2**

With respect to Costa, Strand, and Johnston, Staley argues that the Bank failed to timely disclose them in response to discovery requests asking who was involved in the decision to terminate Staley. The Complaint in this matter was filed on December 1, 2010. The Case Management Order was filed March 22, 2011. The original discovery cutoff date was March 1, 2012 pursuant to stipulation of the parties. Due to an illness on the part of Staley's counsel, Staley moved for an extension of that deadline, which the Bank did not oppose. The Court moved the deadline to May 1, 2012.

On May 18, 2011, Staley served her first set of interrogatories. Among other requests, she asked the Bank to identify all individuals who participated in the decision to terminate Staley. The Bank did not identify Costa, Strand or Johnston in its response. Almost a year later, and just two weeks before the discovery cutoff date, Staley's counsel deposed the Bank's Rule 30(b)(6) witness, Douglas Strackbein. In that deposition, Strackbein identified Costa, Strand and Johnston as having a role in the decision to terminate Staley. This was the first time the Bank produced this information to Staley.

Counsel for the Bank indicates that prior to Strackbein's deposition, she too was unaware that Costa, Strand and Johnston were involved in the decision to terminate Staley. *Olsson Aff.*, ¶ 3, Dkt. 71-1. However, on December 2, 2011, the Bank's counsel supplemented its response to the question about those involved in the decision to terminate Staley by indicating that Strackbein was involved. *Casperson Aff.*, Ex. E, Dkt. 56-5. It seems only logical that Strackbein could have and should have, at that point, disclosed to counsel all others involved in Staley's termination, including Costa, Strand,

and Johnston. The Court will not guess why that did not happen, but there is really no excuse for why that information was not passed along to counsel, and, in turn, given to opposing counsel at that point. Disclosing these individuals more than four months later during a deposition just two weeks before the discovery cutoff was, in fact, an untimely disclosure.

However, counsel for the Bank immediately tried to rectify the situation. Upon learning about Costa, Strand, and Johnston at Strackein's deposition, the Bank's counsel offered Staley's counsel an opportunity to coordinate deposition dates for them. *Olsson Aff.*, ¶ 4, Dkt. 71-1. Staley's counsel did not respond to the offer. Moreover, counsel for both parties apparently informally agreed to extend the discovery deadline by a month. *Olsson Aff.*, ¶ 7, Dkt. 71-1. The Bank's counsel also offered to stipulate to further extend the discovery deadline, but once again received no response from Staley's counsel. *Olsson Aff.*, ¶ 8, Dkt. 71-1.

Apparently in response to not receiving a response from Staley's counsel about extending the deadlines, the Bank filed its own motion to extend the discovery and dispositive motion deadline on May 8, 2012. In that motion, the Bank's counsel explained that she had attempted to discuss the issue with Staley's counsel on three occasions but to no avail. Instead of issuing a decision on the motion without opposing counsel's input, the Court denied that motion without prejudice, and ordered the parties to meet and confer, and schedule a conference with the Court's staff to discuss the proposed extension. Counsel never contacted the Court.

**MEMORANDUM DECISION AND ORDER - 4**

There is no doubt that the Bank was tardy in its notification that Costa, Strand and Johnston were involved in the decision to terminate Staley. And, in the Court's estimation, that delay was inexcusable. However, Staley should have worked with opposing counsel to rectify the situation, or at least brought the issue to the Court's attention back in April 2012 when she first learned about the situation. At that point, before dispositive motions were filed, and before trial was even scheduled, the Court could have fashioned a remedy which would have sanctioned the Bank, whether monetarily or otherwise, but allowed the case to be tried without excluding clearly relevant testimony. Instead, Staley waited until the eve of trial to assert the objection. That was not the proper way to approach the problem, and Staley's failure to try to figure out a way to pursue additional discovery and depositions of these individuals suggests that not being allowed to do so was harmless. Fed. R. Civ. P. 37(c)(1).

Accordingly, the Court will reluctantly deny the request to prohibit the introduction of evidence about Costa, Strand and Johnston's involvement in the decision to terminate Staley. Had Staley raised the issue earlier or if the Bank had not made at least some effort to remedy their late disclosure, the Court would have had little reluctance in imposing significant sanctions.

### B.      Hunt

Staley seeks to prohibit the Bank from introducing evidence regarding Ben Hunt, because the Bank waited until May 23, 2012, several days after discovery had closed, to disclose in response to a discovery request that Hunt was an employee who had been

terminated for misuse of his credit card. The Bank suggests that it did not disclose Hunt earlier because it had no systematic way of determining which employees had been terminated for misuse of a corporate credit card – instead it had to rely on querying persons who may have had such knowledge.

The Court is not convinced that the Bank's excuse is a good one. However, the Court is once again troubled by the fact that Staley did not attempt to rectify the situation back in May 2012, when it first learned about Hunt. As with Costa, Strand and Johnston, had Staley brought this to the Court's attention earlier, the Court could have constructed a reasonable sanction which would have allowed the trial to proceed with all relevant information. Waiting until the eve of trial to ask the Court to prohibit the evidence was not the proper way to proceed. Moreover, it appears that Staley's counsel was able to question the Bank's 30(b)(6) witness about Hunt, so Staley is not completely in the dark about Hunt at this point.

Accordingly, the Court will not grant the request to prohibit evidence about Hunt at trial. However, if requested, the Court will allow Staley's counsel to examine Hunt or other witnesses who have information about Hunt, such as Bills[2], outside the presence of the jury before Hunt is called as a witness. This should give counsel some opportunity to discover any missing information before addressing Hunt on the witness stand.

2.     **Motion for Sanctions/In Limine**

---

[2] The requested sanctions related to Ms. Bills will be addressed below.

Staley's motion for sanctions focuses on three alleged discovery abuses by the Bank: (1) that the Bank failed to timely produce documents regarding disciplinary actions taken against other employees who misused their corporate credit cards; (2) that the Bank's 30(b)(6) deponent, Darlene Bills, gave false testimony; and (3) that the Bank failed to timely disclose individuals with knowledge of the case who are now listed on the Bank's witness list.

### A.    Documents Related to Other Employees Who Misused Corporate Credit Cards

There is no dispute that Staley requested documents related to disciplinary actions taken against other employees who misused company credit cards early in discovery. The Bank objected to the request as overly broad, but agreed that it would inquire of the HR individual responsible for the business line in which Staley worked, as well as the Bank security officer, about any such employees in the region where Staley worked for the five-year period before her termination. The Bank later notified Staley's counsel that neither recalled anyone who fit the criteria, and it produced no documents.

On May 23, 2012, Staley's counsel deposed the Bank's 30(b)(6) deponent, Darlene Bills. During that deposition, Bills revealed several employees who had been terminated for violating the Bank's corporate credit card policy. She also produced a summary of information relating to those individuals. This disclosure raises a serious question as to whether the Bank had discharged its responsibility to conduct a reasonably thorough investigation in responding to Staley's discovery requests. Fed. R. Civ. P. 26(g).

On December 14, 2012, one week before pretrial materials were due, and less than two months before trial, the Bank's counsel asked Staley's counsel to stipulate to the admission of Bills' summary report as a Rule 1006 summary. Staley's counsel requested the documents supporting the summary before agreeing to admit it. The Bank produced approximately 700 pages of documents. Upon review of the documents, Staley's counsel noticed that the documents included information indicating that other employees, rather than be fired, had been given warnings with regard to the misuse of corporate credit cards. This information is clearly relevant and critical to Staley's case. Indeed, it is at the heart of Staley's case because she was fired, without being given any less drastic sanction, for what amounted to a fairly minor violation of the Bank's policies regarding the use of a corporate credit card. The information is even more critical because the Bank has claimed that they have consistently applied a zero tolerance policy for misuse of corporate credit cards. This evidence belies that assertion.

The Bank suggests that Staley is to blame for the late disclosure because she failed to narrow her discovery requests, did not follow up with more discovery requests seeking personnel files, and because she did not request the documents supporting the summary when Bills produced the summary at her deposition. Such blame is misplaced.

Unlike the discovery issue regarding witnesses addressed above, Staley's counsel had no reason to know that the Bank had withheld the information about warnings at the time of Bills' deposition. Moreover, although the Bank had objected to Staley's original discovery request on the grounds that it was overly broad, it cannot stand behind that

objection where it had, in fact, uncovered information responsive to the request. Even if the Bank's original objection was valid, which the Court need not and is not deciding at this point, that would only mean the Bank was not required to search for such documents because it would be unduly burdensome and costly. Fed. R. Civ. P. 26(b)(2)(B). But where, as here, the Bank knew it had the documents because it used them to create the summary which was produced at the May 23 deposition, it was clearly required to supplement its discovery responses at that point. Fed. R. Civ. P. 26(e). It failed to do so, and Staley only realized the documents existed when the Bank's counsel sought a stipulation on the summary report just prior to trial. Thus, the Bank has failed, without justification, to comply with its discovery obligation.[3]

The Bank's late disclosure has no doubt harmed Staley as she and her counsel prepare for trial. First of all, such information would have been quite useful in the context of dispositive motions. Second, and of importance at this stage of the case, Staley's counsel now has to incorporate this information into her trial strategy on the eve of trial while her plate is already full with trial preparation. Finally, Staley's counsel must go to trial without having had the chance to conduct additional discovery or depositions on these very relevant facts.

For these reasons, the Court must sanction the Bank. One sanction is to allow Staley's counsel the opportunity to depose the witnesses who were given warnings about

---

[3] The Bank's suggestion that its disclosure was timely because it disclosed the documents pursuant to Fed. R. Evid. 1006 is a complete red herring. It is true that a party proposing to use a summary at trial to prove the content of voluminous writings must only make the documents available to the opposing party at a "reasonable time and place." Fed. R. Evid. 1006. But that does not relieve the party from otherwise producing documents responsive to discovery requests.

improper use of their corporate credit cards, at the Bank's expense, and at Staley's counsel's convenience between now and the trial. However, that may be impossible or very disruptive to Staley's counsel given the fact that trial is right around the corner. Last minute disclosures do not generally cure the prejudice to the opponent. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). If it is possible, and Staley's counsel wishes to pursue the depositions, the Bank's counsel must do everything possible to make it happen.

However, the Court also finds that another, perhaps more appropriate, sanction is to inform the jury about the Bank's discovery abuse. Accordingly, the Court will instruct the jury that the Bank failed to comply with its discovery obligation by not disclosing to Staley's counsel that other individuals had been given warnings with regard to misuse of a corporate credit card in a timely fashion. The Court will instruct the jury that they may draw any reasonable inference, including an adverse one, from the Bank's discovery abuse. Fed. R. Civ. P. 37(c)(1)(B).

In addition, the Court may well preclude the Bank from offering any evidence attempting to explain away the apparently inconsistent application of their "zero tolerance policy" for misuse of an employee's corporate credit card. However, not being familiar with what evidence the Bank may wish to offer, and how that will prejudice Staley, the Court will have to take that up with counsel during the trial. Fed. R. Civ. P. 37(c)(1).

**B.     Darlene Bills**

Staley next contends that the Bank's 30(b)(6) witness, Darlene Bills, perjured herself during her deposition. Most critically, Staley contends that Bills provided false testimony about the other employees who received warnings before being terminated for misuse of a corporate credit card. Although there does seem to be some indication that Bills provided false, or at least less than complete testimony, at this point the Court cannot conclude that she perjured herself. Without the benefit of her complete deposition testimony or an opportunity to witness her testimony, the Court simply cannot come to that conclusion.

Accordingly, the Court will not grant Staley's request that the Court instruct the jury that the Bank provided false testimony. Instead, Staley's counsel will be allowed to examine Bills on the stand during trial. If Bills did, in fact, perjure herself, it will make itself known during trial, and it will be nearly as effective as if the Court gave a perjury instruction.

### C. Disclosure of Individuals With knowledge of the Case Now Listed On Witness List

Finally, Staley argues that the Bank failed to timely disclose ten individuals with knowledge of the case now listed on its witness list. In her first interrogatory, Staley asked the Bank to identify all individuals the Bank believed to have knowledge of the facts relevant to this case – a very common and logical request. The Bank objected to the request as overbroad, but provided Staley with a list of five individuals. None of them are on the list of ten Staley claims were untimely disclosed.

The Court has already addressed Staley's request with respect to three of the ten individuals – Costa, Strand, and Johnston. That ruling will stand, and those witnesses will be allowed to testify.

As for the remaining seven witnesses, the Bank argues that Staley never served an interrogatory requesting the Bank to identify its trial witnesses, and that the Bank disclosed them as required by the Court prior to trial. That is not the appropriate question. The question is whether the Bank timely disclosed individuals with knowledge of the case.

However, according to the Bank, all seven of the individuals were known to Staley as individuals with knowledge of the case well before they were disclosed as trial witnesses. Robin Brannon was deposed on April 17, 2012, Staley referenced Mark Thayer and Kelly Huss Dunbar as individuals who made statements that support her claims, Michael Sullivan was discussed in the summary judgment briefs, and Lori Anderson, Brenda Wilson, and Shannon Hurley were identified at Bills' 30(b)(6) deposition.

Once again, it appears that the Bank did not comply with the discovery rules, but noncompliance was harmless. At the very least, as with Costa, Strand, and Johnston, Staley could have brought this to the Court's attention some time ago, and the Court could have dealt with it without having to prohibit relevant testimony at trial. As it stands now, the Court finds the failure to timely disclose was improper, but harmless.

**ORDER**

**IT IS ORDERED THAT:**

1. Plaintiff's Motion in Limine to Exclude Evidence of Late-Disclosed Individuals (Dkt. 49) is **GRANTED in part** and **DENIED in part** as explained above.

2. Plaintiff's Motion for Sanctions/In Limine pursuant to Fed. R. Civ. P. 37 (Dkt. 63) is **GRANTED in part** and **DENIED in part** as explained above.

DATED: January 29, 2013

B. Lynn Winmill
Chief Judge
United States District Court