UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELA STALEY,<br><br>          Plaintiff,<br>   v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br>U.S. BANCORP,<br><br>          Defendant. | Case No. 1:10-cv-00591-BLW<br><br>**AMENDED MEMORANDUM**<br>**DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant's Motion to Quash Subpoena of Chris Christensen. (Dkt. 78). The Court enters this Amended Order because it mistakenly indicated that the Motion to Quash was DENIED instead of GRANTED. This Order is identical to Dkt, 85 in its analysis, but states that the motion to quash is granted instead of denied.

## BACKGROUND

Lawrence Christensen was the corporate investigator for U.S. Bank (the "Bank") who investigated Staley's alleged misuse of her corporate credit card. Staley's counsel deposed Christensen on April 17, 2012. At the outset of the deposition, the Bank provided Staley's counsel with approximately 150 pages of documents which were purported to be Christensen's investigative file of Staley. *Casperson Aff.*, Dkt. 80-1. Most

MEMORANDUM DECISION AND ORDER - 1

of the documents had never been previously produced, even though Staley had specifically requested the documents in earlier discovery requests. *Id*.

Although Staley's counsel attempted to review the documents as quickly as possible upon receiving them at the deposition, and she tried to review at least some of them with Christensen during the deposition, Christensen was apparently unable to identify some of the documents and did not recognize the handwriting on other documents. *Id.* Accordingly, Staley's counsel was not able to conduct the deposition or question Christensen about the documents as thoroughly as she could have had she been provided the documents in a timely fashion. *Id.* However, Staley's counsel asked for, and the Bank's counsel agreed, that she could hold open the deposition, at least as to documents not addressed, so she could review the documents and follow up with Christensen at a later date. *Olsson Aff.,* Ex. A, Dkt. 82-2.

During the deposition, Staley's counsel did illicit from Christensen his testimony that he, like some of the other witnesses addressed in the earlier motions in limine, had apparently misused his corporate credit card without being immediately terminated. *Id.* Counsel notes that such testimony is indispensable to Staley's case, and that Staley believes that Christensen's live testimony is critical to conveying this information regarding the Bank's treatment of similarly-situated individuals. *Id.*

In late December 2012, counsel for the Bank contacted Staley's counsel and told her that Christensen had been diagnosed with a serious illness, and that he may not be able to testify at trial or be available for a trial deposition. *Id.* The Bank's counsel

requested that Staley's counsel stipulate to Christensen's unavailability at trial or a trial deposition, and that his earlier deposition be used instead. *Id.* Staley's counsel indicated that she could not make that determination without hearing from Christensen's physician. *Id.*

On December 21, 2012, the Bank's counsel filed its witness list and trial brief, both of which asserted that Christensen was unavailable for trial, and that his deposition would be used in lieu of live testimony. She also indicated that an affidavit or declaration from Christensen's physician would be forthcoming. Dkts. 43 and 44). The affidavit or declaration was delayed because of difficulty getting it from the physician. *Olsson Aff.*, Dkt. 82-1.

Therefore, Staley's counsel issued a subpoena to Christensen on January 21, 2013. *Id.* Two days later the Bank's counsel provided Staley's counsel with a declaration from Christensen's physician. *Id.* The declaration did not provide much detail – presumably it was the same as, or similar to, the one filed with the Court in support of the motion to quash. Dkt. 78-1. That declaration indicates that Christensen's oncologist believes that Christensen's health condition would make it detrimental to his health to be subjected to trial or a trial deposition. Dkt. 78-1. Based upon the vagueness of the declaration, Staley's counsel would not stipulate to Christensen's unavailability for trial.

## ANALYSIS

On timely motion, an issuing court must quash or modify a subpoena which subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). The grant or denial of

a motion to quash a subpoena is a matter of the Court's discretion, and is reviewed only for an abuse of that discretion. *Mueller v. Auker*, 700 F.3d 1180, 1194 (9th Cir. 2012). The burden of showing that a subpoena is unduly burdensome, unreasonable or oppressive is upon the party to whom the subpoena is directed. *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966).

Here, although the physician's declaration lacks detail, the physician states in no uncertain terms that subjecting Christensen to testify at trial or a deposition at this point would be detrimental to his health. *Dr. Schultheiss Decl.,* Dkt. 78-1. Moreover, the Bank later submitted a second declaration from the physician under seal. Dkt. 83. The Court will not list the details of that declaration because it was filed under seal, but will simply note that the physician again states that Christensen should not attend trial. Dkt. 83. The Court will not second guess the physician's medical opinion, and the Court will not require Christensen to appear at trial or a trial deposition. To that extent, the Court finds an undue burden, and the motion will be granted.

However, the Court agrees with Staley that Christensen is probably a critical witness, and it would be better if Christensen could testify at trial, even if done via video conference. Therefore, the Court will request that the Bank confer with Christensen – and possibly his physician, to the extent allowed by Christensen – to determine if it is at all possible for him to testify. Because the physician's declarations are somewhat general, the Court has no way of knowing whether there are any circumstances under which Christensen could testify at trial. For example, Christensen might be able to testify from a

**MEMORANDUM DECISION AND ORDER - 4**

remote location with carefully circumscribed time limits. The Court understands that the Bank's counsel has offered to allow the Court to review Christensen's medical records *in camera*, but the Court does not feel that is necessary. Instead, the Court will request that the Bank make every effort to determine whether there is a circumstance which would allow Christensen to testify at trial.

The Court also understands that the parties may have already been in contact with the Court's IT department to determine whether certain types of video conferencing, such as skype, would work, but the Court would request that the parties consider other avenues as well. For example, Christensen could possibly testify via video from a separate room at the courthouse, from another courthouse, or from a commercial location such as a Kinkos, etc. The Court does not know whether these alternatives alleviate Christensen's physician's concerns, but the Court would like to know that before they are ruled out as options.

Regardless of whether Christensen with be able to testify at trial, the Court is once again concerned with the Bank's late disclosure of documents in this case. The Bank's counsel indicates that she was unaware of the Christensen file containing the documents until Christensen produced them at the deposition. Christensen apparently had recently retired from the Bank. However, the investigator's file on Staley seems to be the type of information counsel should have been made aware of early in the case. It is difficult to believe that the Bank's investigator took work files related to the investigation of an

**MEMORANDUM DECISION AND ORDER - 5**

employee with him when he retired instead of leaving them, or at least a copy of them, with the Bank. It seems that someone should have produced them to counsel.

Thus, the Bank has once again failed in its discovery responses by not providing Staley with Christensen's investigative files until the day of Christensen's deposition even though they had been previously requested. Moreover, even if the documents had not been specifically requested, they are the type of documents which should have been disclosed pursuant to Rule 26(a)(1)(A)(ii).[1] Because of that late disclosure, Staley's counsel was at a disadvantage when she deposed Christensen. Such harm might have been minimized if Christensen were available to testify at trial, but that remains to be seen.

Nevertheless, by allowing Staley's counsel to hold open the deposition, the Bank's counsel effectively mitigated the damage caused by the late disclosure. Apparently, Staley's counsel did not take advantage of that opportunity. That is not to say that Staley's counsel did anything wrong. The Court recognizes that counsel assumed she would have a chance to exam Christensen at trial, so her decision not to continue the deposition makes sense. However, as was suggested in the Court's earlier order on the separate motions in limine, the Court likely would have required the Bank to pay for the second deposition had counsel sought the Court's intervention when the issue first presented itself.

---

[1] Notwithstanding both parties' apparent oversight in providing initial disclosures to each other early in this case, the Bank still had an obligation to provide clearly relevant documents to Staley under the discovery rules.

**MEMORANDUM DECISION AND ORDER - 6**

As it is, we are left in an unfortunate position – particularly for Christensen – but also for this case. Witnesses are sometimes unavailable because of illness, and it is nobody's fault. Although the Court is displeased with the Bank's late disclosure, the remedy is not to order Christensen to testify against his physician's advice.

However, the Court feels it is important to let the Bank know that the Court is becoming concerned about the pattern of discovery abuse Bank in this case. In fact, this case is trending toward the type of case where a more drastic penalty is warranted. The Ninth Circuit has indicated that harsh penalties, such as default judgment, are only used in extreme circumstances. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012). "A court must consider the following five factors before striking a pleading or declaring default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. (Internal citation and quotations omitted). This case is not at that stage – yet. But the Court is very concerned that a consistent pattern has developed in this case in which the Bank has repeatedly failed to provide a timely and complete response to Staley's discovery requests. The problem is serious enough to raise questions as to whether the Bank's tardy and incomplete responses are interfering with Staley's right to a fair trial. Accordingly, the Court again asks the parties, particularly the Bank, to make sure they have tried everything possible to arrange for Christensen to testify at trial.

**ORDER**

**IT IS ORDERED THAT:**

1. The Court has before it Defendant's Motion to Quash Subpoena of Chris Christensen. (Dkt. 78) is **GRANTED**, but with the Court's requests mentioned above.



DATED: January 31, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court